IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| KAREN ANNE BRIGGS,<br><br>     Plaintiff,<br><br>v.<br><br>LAGRANGE ART MUSEUM, INC., CINDY FULKS, LEIGH NEWMAN, HOLLY WINNER, and ETHYL AULT,<br><br>     Defendants. | CIVIL ACTION FILE<br><br>NUMBER 3:17-cv-181-TCB |

## **O R D E R**

This case comes before the Court on Defendants Lagrange Art Museum, Inc., Cindy Fulks, Leigh Newman, Holly Winner, Laura Jennings, Lauren Oliver, and Ethyl Ault's partial motion [13] to dismiss Plaintiff Karen Briggs' first amended complaint [12] or, in the alternative, for a more definite statement.

## I.    Background

This lawsuit arises from Briggs's termination as executive director of the LaGrange Art Museum (the "Museum"). She alleges claims under the False Claims Act, 31 U.S.C. § 3730(h), and for breach of contract, slander, and tortious interference with contractual relations. The facts relevant to this motion, as alleged by Briggs, are as follows.

In May 2011, Briggs, through her consulting company, entered into a contract to provide consulting services to the Museum, which at the time was in debt and operating at an increasing annual deficit. The Museum is directed by the board of governors, of which Defendants Fulks, Winner, Newman, and Ault were members at different times. Briggs was promoted to interim acting consulting director and, in 2013, contracted to transition into the role of executive director. In January 2015, Briggs was converted into a full-time, salaried employee of the Museum.

Briggs alleges that prior to January 2015, she discovered evidence of federal funds being used to benefit the private interests of members of the board and their associates.

2

Tensions between individual board members and Briggs arose as early as January 2015, as tenant complaints were received by the board about Briggs's management. Briggs alleges that some of the board actions relating to tenants constituted a misuse of public funds. She also repeatedly warned the board's construction oversight committee of these concerns to no avail.

In late 2016, while Fulks was a member of the board, the board voted to approve a new set of bylaws that included a provision to allow the hiring of an executive director and general guidelines as to what terms the executive director's contract should contain. The board then voted to approve offering Briggs the executive director position, and a contract was negotiated during December 2016. This contract was to be offered to Briggs in January 2017, after Fulks left the board at the end of the year.

During this period, Briggs alleges that Fulks and Newman slandered her by telling H. Speer Burdette, president of the Callaway

Foundation, a major museum contributor and owner of some Museum property, that Briggs had stolen funds from the museum.[1]

In April 2017,[2] at an executive committee meeting of the board, Newman told Briggs, "[Fulks] and I have decided you should be fired and we have a letter stating that effective immediately, you are fired." [12] ¶ 68. Fulks was not a member of the board at that time. Briggs responded that she reported to the president of the Board, Bobby Cammon.

In May, Briggs spoke with a reporter from Minnesota Public Radio News for a story regarding the misuse of funds at the Museum under the previous director. The story eventually implicated several board members in the alleged financial misconduct. On July 1, Briggs entered into a new employment contract with the Museum.

---

[1] The first amended complaint contains other allegations of slander against individual Defendants that are not raised in Defendants' partial motion [13] to dismiss.

[2] The first amended complaint refers to this date as 2016. [12] ¶ 68. Because this paragraph also explicitly claims Fulks was not a board member at this time, and taking into account all the facts alleged in the amended complaint, the Court has determined for purposes of this motion that this is a typographical error and the correct date is 2017.

On July 13, at a regularly scheduled board meeting, the board went into executive session and voted to terminate Briggs. Winner, an ex officio, non-voting member of the board, seconded the motion to go to executive session. Prior to the meeting, Newman had circulated blank proxies to members of the board for use at the meeting. The first amended complaint does not specify how many or which board members were represented via proxy.

As Briggs left, she saw Fulks and four other individuals waiting to go into the board meeting. Each of these individuals had been told by Fulks or Newman that Briggs had taken money from the Museum and that they were needed at the meeting to raise additional complaints and provide testimony during the executive session.

On December 6, Briggs filed her complaint, alleging violations of the FCA, breach of contract, slander, and tortious interference with contractual relations against Winner and Fulks. On January 22, 2018, Defendants filed a partial motion [9] to dismiss.[3] On February 5, Briggs

---

[3] Defendants' first partial motion [9] to dismiss is denied as moot, following Briggs's filing of her amended complaint.

filed her first amended complaint [12]. On February 20, Defendants filed their partial motion [13] to dismiss.

Defendants argue for dismissal on three specific counts: (1) Briggs's claim for intentional interference with contractual relations against Winner and Fulks must be dismissed because they were not strangers to the contract; (2) Briggs's claim for slander against Newman must be dismissed as the statement was a privileged intracorporate communication; and (3) Briggs's claim for slander against Fulks must be dismissed because Briggs fails to allege the statement was false.

## II.   Legal Standard on a Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" This pleading standard does not require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) (quoting *id.*). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Iqbal*, 556 U.S. at 678 (citation omitted) (quoting *Twombly*, 550 U.S. at 556); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir. 2012).

Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555–56 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011),

7

the Court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal*, 556 U.S. at 678.

Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III.  Discussion

### A.    Winner and Fulks Are Not Strangers to the Contract

Briggs pleads a claim of tortious interference with contractual relations against Winner and Fulks. The elements of tortious interference with contractual relations are:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Ne. Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga.*, 676 S.E.2d 428, 433 (Ga. Ct. App. 2009) (quoting *Dalton Diversified v.*

8

*AmSouth Bank*, 605 S.E.2d 892, 897–98 (Ga. Ct. App. 2004)). To establish that a defendant acted without privilege, "the defendant must be a stranger to both the contract *and* the business relationship giving rise to and underpinning the contract." *Atlanta Mkt. Ctr. Mgmt. Co. v. McLane*, 503 S.E.2d 278, 283 (1998).

Defendants argue that these claims must be dismissed because Winner and Fulks were not strangers to Briggs's contract.

> Georgia courts have held that a defendant is not a "stranger" to a contract . . . when: (1) the defendant is an essential entity to the purported injured relations; (2) the allegedly injured relations are inextricably a part of or dependent upon the defendant's contractual or business relations; (3) the defendant would benefit economically from the alleged injured relations; or (4) both the defendant and the plaintiff are parties to a comprehensive interwoven set of contracts or relations.

*Britt/Paulk Ins. Agency, Inc. v. Vandroff Ins. Agency, Inc.*, 952 F. Supp. 1575, 1584 (N.D. Ga. 1996), *aff'd*, 137 F.3d 1356 (11th Cir. 1998).

Briggs responds that the question of whether Winner and Fulks were strangers to the contract is one for the jury. However, whether Winner and Fulks acted without privilege because they were strangers to the contract is an essential element of the claim. *See id.* at 1584

9

(under Georgia law, showing defendant is a stranger to the contractual relations at issue is an essential element of the claim). Here, the facts as alleged in the amended complaint do not present a jury question, but rather show as a matter of law that Winner and Fulks are at least parties to a comprehensive interwoven set of contractual relations.

Fulks was a member of the board until the end of 2016. Thus, she was on the board and voted in November 2016 to approve the mechanism for hiring an executive director, Briggs, the following year. In December 2016, the board and Fulks voted to unanimously approve the extension of Briggs's then-current contract. Briggs also alleges, "[b]eginning July 1, 2017, *as approved by the Board of Governors in the Fall of 2016*, [Briggs] entered into a formal individual employment relationship with LAM, subject to the employment contract . . . ." [12] ¶ 80 (emphasis added). Because Briggs alleges that the contract at issue is one that was approved by the board when Fulks was a member of the Board, Fulks is no stranger to the contract but is instead a party to an interwoven contractual arrangement. "[A]ll partys [sic] to an interwoven contractual arrangement are not liable for tortious

interference with any of the contracts or business relationships."
*McLane*, 503 S.E.2d at 283–84.

Briggs argues that because Winner was an ex-officio, non-voting member of the board, she was a stranger to the contract. This is not a meaningful distinction. Winner was a member of the board in 2016 when the contract was executed, and in 2017, when the contract was extended and ultimately terminated. Georgia Courts have found board members further removed than the board in this case to not be strangers to an employment contract. *See, e.g., Johnson v. Metro. Atlanta Rapid Transit Auth.*, 429 S.E.2d 285, 288 (Ga. Ct. App. 1993) (board of ethics established by employer's board of directors was not a stranger to employee's employment contract).

Because Winner and Fulks are not strangers to the contractual relationship at issue, Briggs cannot maintain a claim for tortious interference against them.

**B.     Briggs's Slander Claims Against Newman and Fulks
Require a More Definite Statement**

Defendants argue that Briggs's slander claim against Newman is

barred by the intracorporate privilege, or, alternatively, is insufficiently

clear and requires a more definite statement.

The Court agrees that the amended complaint is insufficiently

clear. Defendants argue that statements made among board members

are privileged, but it is unclear from the amended complaint when the

alleged statements were made and, thus, who was serving on the board

at the time.

It is also unclear what allegations of slander form the basis for

Briggs's claim. In response to Defendants' intracorporate privilege

argument, Briggs points to paragraph 62 of the amended complaint,

where she alleges that around January 15, 2016, Fulks and Newman

"falsely slandered [Briggs] to Burdette claiming that [Briggs] had stolen

funds from [the Museum]." [12] ¶ 62. However, these statements are not

referenced in the amended complaint's slander count, paragraphs 161–

67.

Because the amended complaint contains numerous factual allegations of various claims of slander, the Court will order Briggs to file a more definite statement in the form of a second amended complaint within fourteen days of this Order. The second amended complaint should clearly describe each alleged instance of slander, indicate the alleged date of each instance of slander, and identify the specific Defendants against whom each claim of slander is made. Defendants may then file a responsive pleading based upon the second amended complaint, as appropriate.

### C.   Briggs Alleges that Fulks's Statement to Joseph Was False

Finally, Defendants argue that Briggs has failed to allege that a statement made by Fulks to Chris Joseph was false, as required for a defamation claim. Paragraph 165 of the amended complaint states, "[i]n furtherance of the slanderous scheme, Defendant Fulks told Chris . . . Joseph, accountant and former mayor, that [Briggs] was stealing." [12] ¶ 165.

Briggs responds that elsewhere in the first amended complaint she alleges that Fulks's accusations of theft against her were false. The

Court agrees and finds Briggs sufficiently alleges the falsity of Fulks's statements in paragraph 67(b), e.g., "Fulks accused [Briggs] of stealing . . . . This statement was maliciously false and Fulks knew it." Briggs also clearly denies misusing Museum funds in the amended complaint, *see* [12] ¶ 62 ("Defendants Fulks and Newman falsely slandered [Briggs] to Burdette claiming that [Briggs] had stolen funds from [the Museum]."). Thus, Briggs adequately alleges a slander claim against Fulks with regard to the statement to Joseph.

## IV.   Conclusion

For the foregoing reasons, Defendants' motion [13] to dismiss is granted in part and denied in part. Briggs's claim for tortious interference against Winner and Fulks is dismissed. Defendants' motion to dismiss the slander claim against Fulks is denied. Defendants' earlier motion [9] to dismiss is denied as moot. Briggs is ordered to file a second amended complaint within fourteen days as discussed above.

IT IS SO ORDERED this 2d day of May, 2018.

Timothy C. Batten, Sr.
United States District Judge